**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| JOSHUA FERRILL, | ) | No. CV-08-1828-PHX-MHM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

Currently before the Court is Defendant Union Pacific Railroad Company's Motion for Summary Judgment. (Dkt. #33). Having reviewed the Parties' briefs and determined that oral argument is unnecessary, the Court issues the following Order.

I. PROCEDURAL HISTORY

Plaintiff filed his Complaint on October 6, 2008, alleging one count of negligence. (Dkt. #1). On November 3, 2008, Defendant filed its Answer. (Dkt. #7). Defendant did not file a motion to dismiss, and the Parties proceeded directly to discovery. On October 1, 2009, Defendant filed the instant Motion for Summary Judgment. (Dkt. #33). Plaintiff responded on November 16, 2009, (Dkt. #41), and on December 4, 2009, Defendant filed its reply brief. (Dkt. #43).

## II. FACTS

The following relevant material facts, unless otherwise noted, are not in dispute. Plaintiff was riding an all-terrain vehicle ("ATV") across a railroad bridge in Gila Bend, Arizona, when a Union Pacific train struck Plaintiff's ATV and propelled it into his body, causing him to be severely injured. (Defendant's Statement of Facts ("DSOF"), ¶1). At various times, Plaintiff and other members of the community drove their ATV's from Plaintiff's mother's house to a trailer park at the opposite end of town, trespassing at times on the Defendant's railroad right-of-way, including the bridge where Plaintiff was injured. (DSOF, ¶4–5). At the time of the accident, Plaintiff was trespassing on Union Pacific's right-of-way by being on the bridge, he knew it was illegal for him to be there, (DSOF, ¶2), and he was not attempting to cross the tracks, but instead was riding on the bridge next to, and parallel to the tracks. (DSOF, ¶3).

On the day of the accident, as the train approached the railroad bridge where the accident occurred, the train's engineer and conductor were looking into the sun through a windshield with debris on it from the more than 100 miles the train had already traveled that day. (DSOF, ¶7). Before identifying Plaintiff as a human being, the train crew saw something on the railroad bridge, but could not identify it. After sighting the unidentified object, the train's engineer, Doug Hogan, started sounding the train whistle (or horn) and then set the full-service brake application. (DSOF, ¶8). At some point prior to the train's collision with Plaintiff's ATV, Hogan engaged the train's emergency brake. (DSOF, ¶9; Plaintiff's Statement of Facts ("PSOF"), ¶23). Defendant states that Hogan engaged the emergency break as soon as he was aware the object on the railroad bridge looked like a person in peril, which Plaintiff disputes (DSOF, ¶9; PSOF, ¶23 ).

In addition, Plaintiff alleges instead that Hogan applied the emergency break 10 seconds prior to impact, when it was already too late to stop. (Id. ¶24–25). He also claims that Hogan first saw something on the tracks 42 seconds prior to the train's impact with Plaintiff's ATV, (PSOF ¶20), but that he waited until 19 seconds before impact before

- 2 -

blowing the train's whistle. (Id. ¶22); Finally Plaintiff alleges that if Hogan had begun breaking immediately after he saw something on the tracks, the accident would not have occurred (Id. ¶21).

III. LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact; the moving party must present the basis for its summary judgment motion and identify those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001).

A material fact is one that might affect the outcome of the case under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In addition, in order to preclude summary judgment, a dispute about a material fact must also be "genuine," such that a reasonable jury could find in favor of the non-moving party. Id.; Anheuser-Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 345 (9th Cir. 1995). In determining whether the moving party has met its burden, the Court views the evidence in the light most favorable to the nonmovant. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). The Court may not make credibility determinations or weigh conflicting evidence. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). Further, the Court must draw all reasonable inferences in favor of the nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion for summary judgment, then the burden shifts to the non-moving party to present specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushia Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The nonmovant may not rest on bare allegations or denials in his pleading, but must set forth specific facts, by affidavit or as otherwise provided by

Rule 56, demonstrating a genuine issue for trial. <u>Id.</u>; <u>Anderson</u>, 447 U.S. at 248-49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). In sum, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249.

IV. DISCUSSION

The Parties do not dispute that at the time of the accident Plaintiff was a trespasser on Defendant's railroad right-of-way. Accordingly, the only question before this Court is whether Defendant owed a duty of care to Plaintiff. This issue is controlled by Arizona law, which is in accordance with the Restatement (Second) of Torts ("Restatement"). <u>Delgado v. S. Pac. Transp. Co.</u>, 763 F. Supp. 1509, 1511 (D. Ariz. 1991) (citing <u>Torres v. S. Pac. Transp. Co.</u>, 584 F.2d 900 (9th Cir.1978)).

    A. <u>Liability for Trespassing in Arizona</u>

In Arizona, a "trespasser" is defined as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." <u>Barry v. S. Pac. Co.</u>, 64 Ariz. 116, 120-121, 166 P. 2d 825, 828 (1946); RESTATEMENT (SECOND) OF TORTS § 329. "Arizona law follows the general rule that, with certain exceptions, a landowner owes no duty toward a trespasser except not to willfully or wantonly injure him after discovering his peril." <u>Beesley v. Union Pac. R. Co.</u>, 430 F. Supp. 2d 968, 970 (D. Ariz. 2006); RESTATEMENT (SECOND) OF TORTS § 333. Plaintiff does not allege that Defendant willfully or wantonly injured him. Accordingly, his negligence claim must rest on an exception to the general rule. Sections 334 and 336 of the Restatement are the exceptions most commonly applied in railroad cases and, based on Plaintiff's response to Defendant's motion, are the only exceptions relevant in the instant case. <u>See</u> <u>Beesley</u>, 430 F. Supp. 2d at 970–973 (analyzing only §§ 334 and 336 of the Restatement in granting summary judgment to defendant railroad company); <u>Delgado</u>, 763 F. Supp. at 1513, 1513–14 (finding §§ 334 and 336 of the Restatement may impose a duty on a railroad operator, while §§ 335 and 337 do no apply in railroad cases because they pertain to

artificial conditions on land and "[a] moving train is not an artificial condition on the land; it is an activity carried on by the possessor of the land.").

### B. Liability Under Restatement (Second) of Torts §334

Section 334 of the Restatement provides:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.

RESTATEMENT (SECOND) OF TORTS § 334. "In other words, section 334 contemplates a 'limited area' of land in which a landowner owes a duty of care toward trespassers." Beesley, 430 F. Supp. 2d at 970. Section 334's comment d further clarifies the rule, explaining that a landowner is only liable to trespasser where he knows or should have known that "persons constantly and persistently intrude upon some particular place within the land," and that "it is not enough that [the landowner] know or have reason to know that persons persistently roam at large over his land." RESTATEMENT (SECOND) OF TORTS § 334 cmt. d. "As applied to railroad companies, Arizona courts have traditionally limited this rule to railroad crossings and pathways of which the company was, or should have been, aware." 430 F. Supp. 2d at 970; see Torres v. S. Pac. Transp. Co., 584 F.2d 900, 903 (9th Cir.1978) (noting that § 334 has most commonly been applied in the so-called "pathway cases"—i.e. where trespassers were injured crossing pathways across railroad tracks); S. Pac. Co. v. Bolen, 76 Ariz. 317, 264 P.2d 401 (1953) (noting that existence of a pathway "normally would place one who was crossing thereon in the category of licensee rather than a trespasser").

In support of its summary judgment motion, Defendant argues § 334 is inapplicable for two reasons: (1) the railroad bridge on which Plaintiff's injury occurred is not analogous to a pathway and is not, therefore, subject to § 334's exception to the general rule; and (2) the railroad bridge is not a limited area within the meaning of § 334.

The Court turns first to Defendant's argument that Plaintiff has not identified a limited area. Contrary to Defendant's position, a duty otherwise owed under § 334 cannot be

eliminated merely because trespassers also roam at large over a landowner's land. For example, it could not be that a railroad company is relieved of a duty of care to persons utilizing a well-known pathway merely because the railroad right-of-way is also trespassed upon at other locations. This conclusion is buoyed by the Restatement's comment d, which notes that "*it is not enough* that [the landowner] know or have reason to know that persons persistently roam at large over his land." RESTATEMENT (SECOND) OF TORTS § 334 cmt. d. Accordingly, the fact that Plaintiff and other persons roamed at large over Defendant's Gila Bend right-of-way does not negate a potential duty stemming from a constant trespass of a limited area.

As for Defendant's claim that the railroad bridge is not a "limited area," the Court finds it unavailing. The use of the phrase "limited area" in § 334 is not specifically defined, but it has been interpreted to mean a "particular area." See Delgado, 763 F. Supp. at 1515 (noting that to prove a duty arising from § 334 a plaintiff must produce "evidence to show that people constantly intrude on the particular area."). In Torres, the Ninth Circuit rejected liability under § 334, noting that "[t]here is no indication in the record that anyone has ever hitched a ride *on this particular car before*, nor that any trespasser had at any previous occasion boarded any freight car at or near *this precise location*." 584 F. 2d at 903 (emphasis added). In so doing, it clearly considered the railroad car on which Plaintiff hitched a ride and the location in the railroad yard which the plaintiff boarded that car to be limited areas for the purpose of a § 334 analysis. Plaintiff has not argued that Defendant owes a duty to care to trespassers all along its railroad right-of-way. Instead, he has identified a specific location; the railroad bridge on which his accident occurred. By pointing to the railroad bridge, Plaintiff has done enough to survive summary judgment, as this Court does not find that a particular railroad bridge is sufficiently distinguishable from a specific pathway, area in a train yard, or railroad car such that no reasonable juror could conclude Plaintiff has failed to identify a limited area.

In addition to identifying a limited area, Plaintiff must prove that trespassers made

constant use of that area.[1]  Defendant argues that Plaintiff cannot prove constant usage because there is no evidence in the record of a well-beaten path crossing the railroad tracks on the railroad bridge. A well beaten-path crossing railroad tracks, however, is merely visual evidence of a constant use of a railroad right-of-way; it is not a prerequisite for applying § 334. See Barry, 166 P.2d at 826 (noting that § 334 might apply because of evidence concerning "a fairly well beaten footpath [across the tracks],"which "had been used continuously for many years by residents of the neighborhood as a shortcut across the vacant block."). Ultimately, Plaintiff must only prove that trespassers constantly used the railroad bridge in question, such that Defendant should have been aware of their presence. See Delgado 763 F. Supp at 1515 (finding § 334 inapplicable "because [plaintiff] offered no evidence to show that people constantly intrude on the particular area."). It is conceivable, therefore, that this burden can be met without evidence of a well-beaten path. The Court, therefore, must turn to the evidence in the record.

The evidentiary record on the issue of constant usage consists almost entirely of Plaintiff's deposition testimony. It shows that Plaintiff, in addition to other members of the Gila Bend community, use ATVs as a method of transportation. (Dkt. #34-2). This ATV use has caused the development of a number of dirt trails or tracks that allow riders to travel from one part of town to another. (Id.). Some of these paths run parallel with and cross Defendant's railroad right-of-way. (Id.). One path in particular leads up to the railroad bridge where Plaintiff's accident occurred, beginning again on the other side. (Id.). There is, however, no visible dirt path on the bridge itself because the railroad tracks are

---

[1]Defendant also seems to suggest that the Court not consider the question of constant usage, as § 334 applies exclusively to pathway cases, which it claims this case is not because Plaintiff was not attempting to cross railroad tracks, but instead was riding his ATV parallel to railroad tracks. The Court disagrees. Although it is most commonly applied in pathway cases, nothing about § 334 specifically limits it to such situations. See Delgado, 763 F. Supp. at 1515 (finding § 334 inapplicable where plaintiff was injured after falling out of railroad car, but doing so based on the particular facts of the case, not because § 334 could never apply in such a situation).

surrounded by rocks. (Id.). The path leading up to and coming down from the railroad bridge was shown to Plaintiff "by people who rode their ATV on [the path] on a regular basis." (Id.). Plaintiff identified by name three other individuals that used the track and railroad bridge and testified as to having seen other people whom he did no know personally using the same path. (Id.). In the two weeks prior to his accident, Plaintiff estimated that he traveled on the path that crossed the bridge approximately ten times. (Id.). Additionally, Plaintiff placed into evidence two pictures showing ATV paths leading up to the railroad bridge in question. (Dkt. #41-1, exhb. 5).

In arguing that Plaintiff cannot prove constant use, Defendant relies on two cases which are distinguishable from the instant one—Torres and Delgado. In Torres, the Ninth Circuit rejected liability under § 334, noting that "[t]here is no indication in the record that anyone has ever hitched a ride on this particular car before, nor that any trespasser had at any previous occasion boarded any freight car at or near this precise location." 584 F. 2d at 903. In Delgado, the court concluded that a plaintiff had no case under § 334 because "he has offered no evidence to show that people constantly intrude on the particular area where he waited in the Yuma yard without Southern Pacific's permission." 763 F. Supp. at 1515. Unlike Torres, Plaintiff has introduced evidence that trespassers besides Plaintiff have utilized railroad bridge in question. And, as opposed to Delgado, there is evidence that other persons besides Plaintiff trespassed on the railroad bridge. There is in this case, then, very clearly some evidence of constant use of a limited area. The question, then, is whether this evidence is sufficient.

The various railroad cases on which this Court has relied are silent as to what precisely constitutes constant usage. This Court will not attempt to provide an authoritative construction of the word's meaning within the context of § 334. It suffices to say, that "constant" is defined as "continually occurring or recurring." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2008). Viewed in the light most favorable to Plaintiff, the evidence shows that numerous persons frequently used the route that lead up to, over, and down from the bridge. This use was recurrent enough that it caused visible dirt paths or

trails leading to and from the railroad bridge to be formed, and which might be viewed as akin to a well-beaten path. Additionally, Plaintiff, indicated that he used the bridge approximately ten times in the two weeks leading up to his accident. This evidence is far from conclusive proof of constant usage, but this is not a case like <u>Delgado</u> and <u>Torres</u> where no evidence of constant usage was introduced. Accordingly, the Court finds that the matter of constant usage is one more properly answered by a jury. And based on Plaintiff's testimony and the visual evidence, the Court finds that a reasonable juror could conclude that ATV operators made constant use of the railroad bridge.

Assuming, without deciding that Plaintiff can prove constant use of a limited area by trespassers, he must also show that Defendant knew or from facts within its knowledge should have known of this usage. RESTATEMENT (SECOND) OF TORTS § 334. It does not appear to the Court that Defendant has argued for summary judgment on this ground. Regardless, the Court finds that there is sufficient evidence for a finder of fact to conclude that Defendant should have been aware of the constant use of the railroad bridge. First, visual evidence of paths to and from the railroad bridge could have made Defendant aware that ATV users were utilizing the bridge. In addition, Defendant's Chief Police Officer, testified that the railroad bridge would be attractive to people on ATVs because it offered an easy method of crossing Highway 85, and Plaintiff testified that he and other ATV riders used the bridge for precisely that purpose. A reasonable juror might conclude that the railroad bridge's utility as a means of crossing Highway 85 separates it from other places on Defendant's right-of-way, suggesting they should have known it was likely to be used in such a manner by trespassers. Finally, Defendant has not argued that even assuming a duty of care, there has been no breach of that duty. Summary judgment, therefore, is not appropriate based on § 334.

    C.    <u>Liability Under Restatement (Second) of Torts §336</u>

Under § 336 of the Restatement:

> A possessor of land who knows or has reason to know of the presence of another who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to carry on his

1 activities upon the land with reasonable care for the trespasser's safety.

2 RESTATEMENT (SECOND) OF TORTS § 336. As explained in Delgado, this section "requires a possessor of land to act to protect a trespasser's safety once the possessor knows or reasonably should discover the trespasser's presence." 763 F. Supp at 1516. This duty is not owed to trespassers generally, but instead to an individual trespasser. Id. at 1513. In other words, unlike, § 334, a duty under § 336 arises not from general knowledge of trespassers constantly using a particular area of land, but instead from specific knowledge or facts that should give a landowner knowledge that a particular trespasser is on the land. Accordingly, absent information from which a landowner should know a specific trespasser is on his property, a duty of care under § 336 arises at the moment when the landowner becomes aware of the trespasser's presence. Delgado, 763 F. Supp at 1513 (noting that § 336 "impl[ies] knowledge of a particular person who is on the land."); see RESTATEMENT (SECOND) OF TORTS § 336 cmt. c ("The possessor's duty [is] to exercise reasonable care in conducting his activities so as to avoid causing harm to a trespasser whose presence is known to him."). Finally, § 336 applies only to situations involving "affirmative action, which if negligently carried on may cause serious injury as an immediate and direct consequence, such as starting or stopping trains, giving or failing to give a signal by bell or whistle," as opposed to "passive negligence, such as a failure to keep a constant, vigilant lookout, or a failure to carry out a routine inspection at a time when no peril is foreseeable." Torres, 584 F. 2d at 904.

As a preliminary matter, this case involves the type of affirmative action, or lack thereof, that is covered by § 336. The Parties' dispute centers upon whether the train's engineer, Hogan, acted reasonably in the moments leading up to the accident. Defendant argues that summary judgment is appropriate because as soon as Engineer Hogan determined that the unidentified object he saw on the railroad bridge was a human being, he applied the emergency break, which was all that could possibly be done to prevent an accident and, therefore, complied with § 336's duty of care. In his Statement of Facts, Plaintiff disputes Defendant's contention that Hogan pulled the emergency break as soon as the crew identified

the object on the railroad bridge as a human being. He has not, however, come forward with evidence in support of this position. Instead, in his statement of facts, Plaintiff focuses on Hogan's actions prior to the time he applied the train's emergency break. Specifically, Plaintiff asserts that Hogan first saw something on the tracks 42 seconds prior to impact, (PSOF ¶20); that if Hogan had begun breaking immediately after he saw something on the tracks, he would have avoided hitting plaintiff, (Id. ¶21); Hogan sounded the train's whistle 19 seconds before impact, (Id. ¶22); Hogan did nothing to appreciably slow the train prior to engaging the emergency break, (Id. ¶23); Hogan applied the emergency break 10 seconds prior to the train's contact with Plaintiff's ATV, (Id. ¶24); and when Hogan engaged the emergency break, it was too late to stop the train. (Id. ¶25).

None of these facts, however, directly or indirectly counter Defendant's assertion that Hogan applied the emergency break as soon as he realized the object on the railroad bridge was a person in peril. Additionally, Plaintiff has not introduced evidence suggesting that Hogan's duty of care required him to take steps in addition to engaging the emergency break after he discovered the object on the tracks was a human being. Accordingly, Plaintiff cannot show that Defendant, through Hogan, failed "to carry on [its] activities upon the land with reasonable care for the trespasser's safety" after it knew of Plaintiff's presence on the land. RESTATEMENT (SECOND) OF TORTS § 336. Instead, the evidence shows that Hogan did everything in his power after discovering Plaintiff was on the railroad bridge.

Plaintiff argues, however, that summary judgment is inappropriate because there is a disputed issue of material fact concerning whether Hogan should have begun stopping the train sooner. In support of his position that the emergency break should have been applied earlier than it was, Plaintiff cites to Union Pacific Railroad Operation Rule 33.8, which instruct train engineer's to make emergency stops without hesitation, and the testimony of Charles Culver, an experience locomotive engineer, who testified that railroad rules require an engineer to put his train into an emergency stop anytime something is seen on the tracks. (PSOF, exhb. 4). This argument assumes Defendant owed Plaintiff a duty of care prior to discovering that the object on the tracks was a person in peril. The evidence concerning

railroad rules and standard operating procedures, however, does not supplant the Restatement, and therefore Arizona law, as the source of any such duty. Under § 336 Defendant only owed Plaintiff a duty if Hogan should have known, earlier than he did, that Plaintiff was the unidentified object he spotted on the railroad bridge.

Although his argument insinuates it, Plaintiff has not specifically alleged that Hogan should have known earlier than he did that Plaintiff was a human trespasser. At first glance, Plaintiff's failure to so argue appears fatal to his claim. This Court, however, cannot ignore § 336's comment b and its accompanying example, which, based on the facts of this case, appear to dictate that Plaintiff's claim survive summary judgment. Comment b, entitled "Precautions when possessor's activities highly dangerous," states in part:

> the gravity of the danger threatened by an activity which, unless carefully carried on, is likely to cause death or serious bodily harm, requires the possessor to exercise reasonable care not only when he knows that a trespasser is at some point made dangerous by it, or is reasonably certain or regards it as highly probable that he is at such a point, *but also when he sees an object or hears a sound which causes him to realize that there is a substantial chance that the trespasser may be at such a point*.

RESTATEMENT (SECOND) OF TORTS § 336 cmt. b (emphasis added). The Restatement illustrates this rule by way of the following example, which is nearly identical to the factual situation in this case:

> The engineer of the X & Y Railroad Company sees lying upon the track a pile of clothing such as would give a reasonable man cause to suspect that it might contain a human being. Under these circumstances the engineer is not entitled to assume that it is not a human being but is required to keep the engine under control until he is certain that it is not.

Id.

It is undisputed that Hogan saw an unidentified object on the railroad bridge, but only engaged the emergency break when he realized that object was a human being. Plaintiff alleges substantial time passed between the initial sighting of the object and its subsequent identification as a human being. Due to the danger threatened by the operation of a train, if in that interim time period a reasonable man would have realized there was a substantial chance the object might have been a human being, than a duty of care arose which Defendant's engineer may have violated by failing to engage the emergency break prior to

the time which he did.  In light, then, of comment b of the Restatement, there is a disputed issue of material fact concerning whether the object Hogan saw in the tracks "would have given a reasonable man cause to suspect that it [was] a human being."  And, if so, whether Hogan, and therefore Defendant, violated the duty of care by applying the train's emergency break when he did.  If a jury decides that no such duty exists, the Court will enter judgment in Defendant's favor, as Plaintiff has not produced evidence showing Hogan breached the duty of care that arose after he discovered the object in the tracks was a human being.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Defendant's Motion for Summary Judgment (Dkt. #33)

**IT IS FURTHER ORDERED** scheduling a status conference to be held on June 14, 2010 at 4:00 p.m. to set dates for the Final Pretrial Conference and Trial.

DATED this 24th day of May, 2010.

_____
Mary H. Murguia
United States District Judge